## PIERCE vs. ROBINSON, Adm.

*Sixth District Court for Sacramento Co., Feb. T.,* 1858.

### COLLATERAL SECURITY—LIEN OF BILL HOLDER.

Where the drawee of a bill of exchange accepts it upon the faith of collateral security, deposited by the drawer, the holder of the bill has no lien upon the security simply as bill holder, but he may have a lien by effect of an equity between the drawer and drawee.

A. being involved conveyed real estate to B. with a secret trust that B. should pay certain debts of A.'s, and reimburse himself out of the profits of the real estate.   A. drew a draft upon B. in favor of C., one of the creditors, which draft B. accepted. B. died, leaving less assets than debts.

*Held,* that C. had no lien upon the profits of the real estate, to secure the payment of his claim, in preference to those of other creditors.

The material facts are sufficiently reported in the opinion.

*Winans & Hyer,* for plaintiff.

*Clark & Gass,* for defendant.

Botts, J.—In this case I find, as matter of fact, that on the 13th

day of September, 1854, *Hutchinson & Greene*, being largely indebted to the said *Frierson*, deceased, did convey and deliver to him, the said *Frierson*, a large amount of personal property, consisting of farming implements, hay, grain, etc., upon a farm in the county of *Yolo*, which farm had been previously conveyed by the said *Hutchinson & Greene* to the said *Frierson;* that the conveyance of the land and the sale of the personal property, although absolute in terms, were, in reality, upon trust; that the trusts were concealed, for the purpose of hindering and delaying the creditors of *Hutchinson & Greene ;* that the secret terms, both of the conveyance of the real estate and of the personal property, were, that *Frierson* should advance a further sum, sufficient to pay off the debts due the hands who had been working on the farm, amongst whom the plaintiff was enumerated, and to whom there was then due the sum of nine hundred and eight dollars and ninety-six cents ($908 96) ; that the said *Frierson* was to carry on the business of the said farm, and to make the necessary advances for the conduct of the same ; that out of the proceeds he was to reimburse himself for the amount due him from *Hutchinson & Greene* on the said 13th of September, 1854, and for the future advances to be made under this agreement ; that the plaintiff was informed of the nature and character of the secret trust ; that *Frierson* paid off the debts due the hands, and other creditors of *Hutchinson & Greene*, to the amount of some ten thousand dollars; that the plaintiff agreed to wait for his money, and, accordingly, *Hutchinson & Greene* drew a draft upon *Frierson*, in favor of the plaintiff, at three months, for the said sum of $908 96 ; that the said draft was duly accepted by the said *Frierson;* that said draft was not paid at maturity, but still remains due and unpaid ; that of the dishonor of the draft no notice was given to the drawers ; that the plaintiff and his wife continued to work upon said ranch up to the 26th of February, 1855, when the bill for their united services amounted to the additional sum of $789 25 ; that during this period, to wit., from the 13th of September, 1854, to the 26th day of February, 1855, the business of the farm was conducted in *Frierson's* name, and that the plaintiff procured from *Frierson's* agent a certificate that he and his wife had worked on " *Frierson's Ranch*," and that the bill for their services, so rendered, amounted to $789 25 ; that the